IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHEN-LI SUNG, M.D., | ) | CIV. NO. 11-00103 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANTS' |
| | ) | MOTION TO DISMISS OR, IN THE |
| vs. | ) | ALTERNATIVE, FOR SUMMARY |
| | ) | JUDGMENT |
| KEITH W. GALLAGHER, in his | ) | |
| official capacity as Commander of | ) | |
| Tripler Army Medical Center; et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiff U.S. Army Major Chen-Li Sung, M.D. ("Plaintiff" or "Sung") was terminated from the Tripler Army Medical Center ("TAMC") General Surgery Residency training program on February 9, 2011.[1] He filed this action on February 16, 2011 against Defendants Keith W. Gallagher, in his capacity as TAMC Commander; Holly Olson, in her capacities as Director of Medical Education and Chairperson of the TAMC Graduate Medical Education Committee

---

[1] Sung was a Captain when he was terminated from the surgical residency program. He has since been promoted to Major. *See* Doc. No. 23-15, Defs.' Opp'n to Pl.'s Mot. Prelim. Inj. ("Opp'n") Ex. 14.

("GMEC"); and the GMEC itself (collectively "Defendants" or "the Army"). Sung contends his termination from the residency program is void because he was denied due process and it was a pretext for unlawful disability discrimination. *See* Doc. No. 9 at 15-18, Am. Compl. at 15-18.

Before the court is Defendants' Motion to Dismiss or, in the alternative, for summary judgment, in which they argue that (1) Plaintiff's claims are barred for failure to exhaust administrative remedies, and (2) the court lacks jurisdiction over claims based upon violations of Army regulations. Alternatively, they seek summary judgment on claims for deprivation of procedural or substantive due process. As set forth below, the court agrees that Sung has failed to exhaust available administrative remedies and the failure requires dismissal of the Amended Complaint.

## II. BACKGROUND

A.  **Factual Background**

On June 30, 2011, the court denied Sung's Motion for Preliminary Injunction, determining that he failed to establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) a favorable balance of equities, and (4) that an injunction would be in the public interest. *See* Doc. No. 33, Order Den. Pl.'s Mot. for Prelim. Inj. That Order set forth the details of Sung's termination,

reviewed and described the hearing and other process provided by the Army, and analyzed the challenges Sung made to those processes in seeking an injunction. The court draws from that Order in setting forth the background facts here.

Sung graduated from Mount Sinai School of Medicine in New York City with a Doctor of Medicine degree on April 29, 1998. Doc. No. 23-3, Defs.' Opp'n Ex. 2. He began a surgical residency at Saint Barnabas Medical Center in Livingston, New Jersey, on July 1, 1998. Doc. No. 23-4, Defs.' Opp'n Ex. 3. He withdrew from his surgical residency during his second year, and worked in the financial field on Wall Street for the next five years. Doc. No. 23-5, at 4, Defs.' Opp'n Ex. 4, at 3; Doc. No. 23-11, Defs.' Opp'n Ex. 10, at 92.

On March 4, 2005, Sung was appointed as a Captain in the U.S. Army Medical Department ("AMEDD"). Doc. No. 23-2, Defs.' Opp'n Ex. 1. He completed the AMEDD Officer Basic course on May 13, 2005, and was assigned to TAMC to resume a surgical residency on May 14, 2005. Doc. No. 23-5, at 6-8, Defs.' Opp'n Ex. 4, at 5-7. While at TAMC, he received high ratings on his officer evaluation reports from 2005 to 2009. Doc. No. 23-6, at 4-11, Defs.' Opp'n Ex. 5, at 3-10. He began his last year of surgical residency (his chief resident year) on May 14, 2009. *Id.* at 2, Defs.' Opp'n Ex. 5, at 1.

Sung had difficulties in his chief resident year. Doc. No. 23-7, at 2,

Defs.' Opp'n Ex. 6, at 1.  In July and August 2009, the general surgery program director, Dr. Ronald Gagliano, counseled Plaintiff.  Dr. Gagliano stated that Sung "began avoiding work due to stress."  Doc. No. 23-8, at 3; Defs.' Opp'n Ex. 7, at 2.  In September 2009, Sung suffered a recurrence of "major depressive disorder," Doc. No. 9 ¶ 11, Am. Compl. ¶ 11, and was on medical leave through November 2009.  Doc. No. 23-7, at 2, Defs.' Opp'n Ex. 6, at 1.  He returned to full duty on December 1, 2009, but was at a "service remediation" level for sixty days.  *Id.*  The "causes of remediation" were listed by Dr. Gagliano as:  "work avoidance/hard case avoidance," "poor patient care," "not carrying out the administrative and supervisory duties of a [fifth year resident]," "relying on other residents to do his work and failure of appropriate supervision," and "interpersonal skills and communication, *i.e.*, reporting on other residents' patient assessments as his own."  *Id.* at 2-3.  Sung's First Amended Complaint asserts that the late-2009 recurrence of his depression was "attributable to conflicts between [Sung] and two of his superiors in the Department of Surgery who falsely accused [him] of being untruthful[.]"  Doc. No. 9 ¶ 12, Am. Compl. ¶ 12.

On February 2, 2010, Dr. Gagliano recommended to the GMEC that Sung be put on probation.  Doc. 23-8, at 3-10, Defs.' Opp'n Ex. 7, at 2-9.  The recommendation indicated that Sung had "failed [his] required rotation while on

service level remediation for January 2010." *Id.* at 3, Defs.' Opp'n Ex. 7, at 2.  It documented, or alleged, certain incidents of substandard performance such as where Sung apparently mis-diagnosed a child who had appendicitis.  *Id.* at 5, Defs.' Opp'n Ex. 7, at 4.  (Sung later disputed the details of these incidents.  Doc. No. 23-10, at 4-11, Defs.' Opp'n Ex. 9, at 3-10.)  Sung accepted the probation plan on February 5, 2010.  Doc. No. 23-8, at 2, Defs.' Opp'n Ex. 7, at 1.

On March 3, 2010, Dr. Gagliano relieved Sung of his clinical duties, and recommended he be terminated from the surgical residency program.  Doc. No. 23-9, Defs.' Opp'n Ex. 8.  Sung refused the proposed dismissal, and provided a lengthy written response disputing many of Dr. Gagliano's details and explaining that he was being treated unfairly.  Doc. No. 23-10, Defs.' Opp'n Ex. 9.  Sung elected to appear before the GMEC with counsel.  *Id.* at 12, Defs.' Opp'n Ex. 9, at 11.  A dismissal hearing was held before the GMEC on March 29, 2010.  On April 5, 2010, the GMEC denied Dr. Gagliano's recommendation to terminate Sung. Doc. No. 23-11, at 115, Defs.' Opp'n Ex. 10, at 114.  Sung's First Amended Complaint states that the GMEC found Sung "had been compelled to work in a hostile environment."  Doc. No. 9 ¶ 12, Am. Compl. ¶ 12.[2]

---

[2] Neither the transcript of the March 29, 2010 GMEC proceedings, nor any specific findings from that proceeding, are part of the record.  Dr. Gagliano's successor (Dr. Dwight Kellicut), however, told the GMEC on December 16, 2010:

(continued...)

Certain conditions, however, were placed on Sung being able to remain in residency training, including allowing Sung to try to transfer to another training program away from TAMC. Doc. No. 23-11, at 115, Defs.' Opp'n Ex. 10, at 114. If such a program was not found, Sung was to resume his residency at TAMC and his probation would be continued. *Id.* By the end of April 2010, Sung was not able to find a residency program outside TAMC, so he returned to TAMC where he was placed on probation for two months. *Id.* at 116, Defs.' Opp'n Ex. 10, at 115.

From June to August 2010 Sung performed "adequately" and was rated "satisfactory." *Id.* at 125-35, Defs.' Opp'n Ex. 10 at 124-34. On September 2, 2010, however, Sung was removed from providing patient care "for medical reasons." *Id.* at 137, Defs.' Opp'n Ex. 10 at 136. A new acting program director, Dr. Dwight Kellicut, wrote that

> [Sung's] performance over the last five weeks has degraded substantially, *i.e.*, oversleeping for rounds, sleeping 20+ hours at a time, missing meals due to no

---

²(...continued)
[d]uring [Sung's] initial dismissal hearing, there was a perception that perhaps the general surgery program was in fact toxic towards Capt. Sung; that we had unfairly singled him out. . . . As I reviewed that whole process and looked at everything, perhaps in my mind I felt that [Capt.] Sung in certain situations had been targeted. But . . . I wasn't there.

Doc. No. 23-11, at 12, Defs.' Opp'n Ex. 10, at 11.

> appetite. Residents report seeing him sleeping excessively in the call room which culminated in his absence from academic conference yesterday and his failure to complete required Morbidity and Mortality Reports in a timely fashion.

*Id.* Dr. Kellicut acknowledged Sung's illness:

> I have a real and honest concern for this resident's well being and his ability to care for patients safely. . . . CPT Sung's difficulties, in my opinion, are due to severe depression and emotional stress. . . . CPT Sung is technically able to operate and he is in good academic standing. However, being a surgeon and making life and death decisions require someone who is 100% at all times, not someone who is 60% at best [as Sung has estimated] . . . . I recommended he see his psychiatrist immediately.

*Id.* at 138, Defs.' Opp'n Ex. 10, at 137. On September 8, 2010, Sung was suspended from patient care, pending a mental health evaluation. *Id.* at 139, Defs.' Opp'n Ex. 10, at 138.

On November 22, 2010, Sung was notified that the program director was recommending that he be terminated from the TAMC General Surgery Residency training program, based on his "regression after removal from probation." According to the notification, "there was consensus [with the program faculty] that you remain deficient in your performance despite remediation and probation." *Id.* at 140, Defs.' Opp'n Ex. 10, at 139. The notification referenced the prior September 2, 2010 and September 8, 2010 suspension memoranda. Sung

acknowledged the recommendation on November 24, 2010. *Id.* at 141, Defs.' Opp'n Ex. 10, at 140. On December 1, 2010, after receiving a notice from Dr. Kellicut, Sung indicated that he did not accept the proposed dismissal and exercised his rights to present evidence to the GMEC, to have witnesses appear on his behalf, and to have an attorney present. *Id.* at 142, Defs.' Opp'n Ex. 10, at 141.

Sung appeared before the GMEC to challenge his termination. *Id.* Sung's termination proceedings were conducted pursuant to the United States Army Medical Command's "Policy on Due Process for Participants in Military Graduate Medical Education Programs" (the "Due Process Policy"). *See* Doc No. 23-13, Defs.' Opp'n Ex. 12. A hearing before the GMEC was held on December 16, 2010, where Sung appeared with counsel. Doc. No. 23-11, Defs.' Opp'n Ex. 10. Under the applicable rules, however, counsel "may not ask questions or make arguments or address committee members during the proceedings, but the trainee may consult the attorney." Doc. No. 23-13, at 19, Defs.' Opp'n Ex. 12, at 18. Sung proceeded to ask questions and represent himself, with counsel at his side for consultation.

The Due Process Policy -- adopted by TAMC in essential form and followed in Sung's termination proceeding -- provides that a program director can recommend termination of a resident, but termination itself must be approved by at

least a two-thirds vote by secret ballot of a GMEC. *Id.* at 12, Defs.' Opp'n Ex. 12, at 11. It provides a resident with extensive rights prior to termination, including (1) the right to hear the reasons for action as put forth by the program director, (2) the right to review all documents before the committee, (3) the right to legal counsel (who may not ask questions or make arguments during the proceedings, but who may advise the resident), (4) the right to respond both orally and in writing to the program director's statements, (5) the right to present testimony of witnesses, (6) the right to submit statements or documentation, or other information, to show why termination should not occur, and (7) the right to appeal the decision. *Id.* at 16, Defs.' Opp'n Ex. 12, at 15; *see also* Doc. No. 23-14, at 24-25 (setting forth same rights in the TAMC Handbook for Residents).

Under the Due Process Policy, a recommendation for dismissal must be based on: (1) failure to satisfactorily progress toward correction of deficiencies while on probation; (2) regression or failure to satisfactorily progress after removal from probation; or (3) any act of gross negligence or willful misconduct. Doc. No. 23-14, at 17, Defs.' Opp'n Ex. 13, at 16. The program director must notify the resident in writing that dismissal is being considered, and the notification must include "specific reasons" for the proposed dismissal. *Id.* A resident is then given a minimum of five working days to submit a written response. *Id.* A hearing may

be convened, which must be at least ten working days after notification to the resident. *Id.* at 17-18, Defs.' Opp'n Ex. 13, at 16-17. The GMEC itself decides whether to terminate a resident -- the program director does not vote. *Id.* at 18, Defs.' Opp'n Ex. 13, at 17. Deliberations and voting are done in closed session, although the decision is documented with confidential written records. *Id.* The resident may file an appeal of a dismissal to the TAMC Commander. *Id.* at 19, Defs.' Opp'n Ex. 13, at 18. The TAMC's decision is final, and there is no right to further appeal. *Id.*

On December 20, 2010, the GMEC agreed with Dr. Kellicut's recommendation and terminated Sung's surgical residency. Doc. No. 17-19, Mot. Prelim. Inj. Ex. O. An appeal, through counsel, was filed with the TAMC Commander, Brig. Gen. Keith W. Gallagher. Doc. No. 17-20, Mot. Prelim. Inj. Ex. P. The appeal was denied on February 9, 2011, and Sung's termination became final. Doc. No. 17-21, Mot. Prelim. Inj. Ex. Q.

**B.     Procedural Background**

Plaintiff filed his initial Complaint on February 16, 2011, followed by an Amended Complaint on April 26, 2011. Doc. Nos. 1, 9. The court denied Plaintiff's Motion for Preliminary Injunction on June 30, 2011. Doc. No. 33. Defendants filed the present Motion to Dismiss or, in the alternative, for Summary

Judgment on July 22, 2011. Doc. No. 35. Plaintiff filed his Opposition on September 20, 2011, Doc. No. 41, and Defendants filed their Reply on September 27, 2011, Doc. No. 43. The court heard the Motion on October 11, 2011.

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) allows a party to seek dismissal of a claim for lack of subject matter jurisdiction. "[A] Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. Chico*, 880 F. 2d 199, 201 (9th Cir. 1989). "With a [Rule] 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction." *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005). When a court considers evidence in a Rule 12(b)(1) motion, it construes disputes of fact in favor of the non-movant. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996).

In situations where exhaustion of administrative remedies is not jurisdictional, it is an affirmative defense that a defendant has both the burden of raising and proving. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) (addressing exhaustion requirements under 28 U.S.C. § 1997e(a)). A nonexhaustion defense should be raised in an

unenumerated Rule 12(b) motion rather than in a motion for summary judgment. *Wyatt*, 315 F.3d at 1119. In deciding such a motion, the district court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. When such a motion to dismiss requires the court to look beyond the pleadings and consider evidence, it does so under "a procedure closely analogous to summary judgment." *Id.* at 1120 n.14.

## IV. **DISCUSSION**

Defendants argue that Sung's claims are barred because he has yet to exhaust available administrative remedies before the Army Board for the Correction of Military Records ("ABCMR"). That is, Defendants contend Sung's claims for due process violations and disability discrimination are not justiciable because the ABCMR can grant relief for such types of injustices, and the claims are addressable in federal court only after a decision by the ABCMR. The court agrees.

"Under the [*Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971),] test as modified by [the Ninth] Circuit, a person challenging a military decision generally must satisfy two threshold elements before a court can determine whether review of his claims is appropriate." *Wenger v. Monroe*, 282 F.3d 1068, 1072 (9th Cir. 2002). "An internal military decision is unreviewable unless the plaintiff alleges

(a) a violation of [a recognized constitutional right], a federal statute, or military regulations; and (b) exhaustion of available intraservice remedies." *Id.* (quoting *Khalsa v. Weinberger*, 779 F.2d 1393, 1398 (9th Cir. 1985)). If the plaintiff meets these two conditions, a court then weighs four factors to determine whether review is appropriate: (1) the nature and strength of the plaintiff's claim; (2) the potential injury to the plaintiff if review is denied; (3) the extent of interference with military functions; and (4) the extent to which military discretion or expertise is involved. *Id.*[3]

---

[3] *Darby v. Cisneros*, 509 U.S. 137 (1993), subsequently held that exhaustion of administrative remedies under the Administrative Procedures Act ("APA") "is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action." *Id.* at 154. *Darby* came after *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), was adopted in the Ninth Circuit in *Khalsa v. Weinberger*, 779 F.2d 1393, 1398 (9th Cir. 1985), under which intramilitary remedies must ordinarily be exhausted. Some courts have thus determined that, following *Darby*, constitutional claims for correction of military records need *not* be administratively exhausted. *See, e.g.*, *Nation v. Dalton*, 107 F. Supp. 2d 37, 42 n.4 (D. D.C. 2000). Other courts disagree. *See, e.g.*, *Saad v. Dalton*, 846 F. Supp. 889, 891 (S.D. Cal. 1994) (concluding that Navy officer may not pursue judicial review before petitioning the Board for the Correction of Naval Records for relief, and distinguishing *Darby* because "[r]eview of military personnel actions . . . is a unique context with specialized rules limiting judicial review").

Although the Ninth Circuit has not specifically addressed whether *Darby* applies to military decisions, it has continued to apply a version of the *Mindes* exhaustion requirement well past *Darby*. *See, e.g.*, *Wenger v. Monroe*, 282 F.3d 1068, 1072 (9th Cir. 2002). But, in any event, *Darby* could not affect the exhaustion requirement in this case because Sung did not bring his claims under the APA. His Amended Complaint invokes only 28 U.S.C. §§ 1331 and 1343 as bases for federal jurisdiction, and does not mention the APA at all. Doc. No. 9 ¶ 2, Am. Compl. ¶ 2. *See, e.g.*, *Hamblet v. Brownlee*, 319 F. Supp. 2d 422, 426 (S.D. N.Y. 2004) (dismissing Army cadet's action challenging suspension for failure to exhaust claim with ABCMR, and recognizing that *Darby* is limited to claims involving the APA -- as the Supreme Court explicitly recognized that "the exhaustion doctrine continues to apply as a matter of judicial discretion in cases not governed by the APA.") (quoting *Darby*, 509 U.S. at 153);

(continued...)

13

(continued...)

Sung has met the first condition (allegation of a deprivation of a recognized constitutional right), but he has not exhausted "available intraservice remedies." Nor has he established that such remedies would be futile or that he should otherwise be excused from completing the process. *See Meinhold v. U.S. Dep't of Def.*, 34 F.3d 1469, 1474 (9th Cir. 1994) ("[E]xhaustion is not required where an administrative appeal would be futile.") (citing *Watkins v. United States Army*, 875 F.2d 699, 705 (9th Cir. 1989) (en banc)); *Muhammad v. Sec'y of the Army*, 770 F.2d 1494, 1495 (9th Cir. 1985) (excusing exhaustion of administrative remedies in military discharge cases: "(1) if the remedies do not provide an opportunity for adequate relief; (2) if the petitioner will suffer irreparable harm if compelled to seek administrative relief; (3) if administrative appeal would be futile; or (4) if substantial constitutional questions are raised.").

The ABCMR is an administrative body established pursuant to 10 U.S.C. § 1552. It consists of civilians appointed by the Secretary of the Army. 32 C.F.R. § 581.3(c)(1). Among other duties, "it directs or recommends correction of military records to remove an error or injustice." 32 C.F.R. § 581.3(c)(2)(i); *see also* 10 U.S.C. § 1552(a)(1) (allowing Secretary of a military department to

---

³(...continued)
*Cunningham v. Loy*, 76 F. Supp. 2d 218, 220-21 (D. Conn. 1999) (requiring exhaustion of remedies before the Coast Guard Board of Correction of Military Records, limiting *Darby* to claims under the APA).

"correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice."). The Director of the ABCMR, Conrad V. Meyer, has reviewed Sung's Complaint and attests that "[t]he Secretary of the Army or his designee, acting upon the [ABCMR's] recommendation, can address MAJ Sung's claims regarding wrongful termination from residency training." Doc. No. 36-1 ¶ 2, Meyer Decl. ¶ 2. Meyer's Declaration is consistent with case law indicating that the ABCMR "has authority to consider claims of constitutional, statutory, and regulatory violations." *Guerra v. Scruggs*, 942 F.2d 270, 273 (4th Cir. 1991) (citing the former 32 C.F.R. § 581.3(c)(5)(v)); *see also Bowman v. Brownlee*, 333 F. Supp. 2d 554, 557 (W.D. Va. 2004); *Guitard v. Sec'y of Navy*, 967 F.2d 737, 741 (2d Cir. 1992).[4]

        Similarly, specifically as to Sung's claim of disability discrimination, 10 U.S.C. § 1552 also provides a potential remedy for such discriminatory acts. *See Hodge v. Dalton*, 107 F.3d 705, 712 n.5 (9th Cir. 1997) (citing *Chappell v. Wallace*, 462 U.S. 296, 303-05 (1983)); *see also Gonzalez v. Dep't of Army*, 718

---

[4] *Bowman v. Brownlee*, 333 F. Supp. 2d 554 (W.D. Va. 2004), noted that 32 C.F.R. § 581.3 was amended in 2000 such that the phrase referring to "the applicant's claims of constitutional, statutory and/or regulatory violations" in the prior § 581.3(c)(5)(v) "was eliminated and transferred to a Department of the Army Pamphlet." *Bowman*, 333 F. Supp. 2d at 557 n.5. As analyzed in *Bowman*, however, the ABCMR still has authority to consider claims of constitutional violations when deciding whether to correct an "injustice." *Id.* at 559; *see also Hamblet*, 319 F. Supp. 2d at 427-28; *Janniere v. United States Army*, 34 F. Supp. 2d 850, 853 (E.D. N.Y. 1999).

F.2d 926, 929 n.2 (1983). Indeed, Sung has already filed "an administrative claim with the Department of the Army that his termination from the Residency Program constituted an impermissible act of discrimination on the basis of disability." Doc. No. 9, FAC ¶ 41. That discrimination complaint, which was not filed with the ABCMR, apparently remains pending. The First Amended Complaint indicates this complaint was filed on April 6, 2011, but that Sung has not received a response and that "the administrative process appears to allow for an indefinite period of appeals." Doc. No. 9 ¶ 41; Doc. No. 17-22.[5]

      Sung has not filed an application under § 1552 for relief with the ABCMR. *See* Doc. No. 36-1, Meyer Decl. ¶ 3. At the hearing, Sung essentially argued that the ABCMR process would be futile, and his written Opposition similarly states that "it is doubtful that the ABCMR can grant Plaintiff the relief he is seeking of being allowed to complete his surgical residency[.]" Doc. No. 41 at 11, Pl.'s Opp'n at 6. But the ABCMR's Director declares otherwise -- the ABCMR could "address MAJ Sung's claims regarding wrongful termination from residency training" and, if appropriate "recommend that the Secretary of the Army

---

[5] It is unclear whether this discrimination complaint would duplicate relief that could also be sought in an application invoking the ABCMR process. What is important, however, is that the complaint remains pending and there is no indication that such a process could not provide Sung relief from any unlawful discrimination.

grant relief." Doc. No. 36-1, Meyer Decl. ¶ 2.[6]  And Sung has not demonstrated that the ABCMR administrative process could not provide a genuine opportunity for relief, or that he should otherwise be excused from exhaustion under factors as discussed in *Muhammad.*  Indeed, this court in its June 30, 2011 Order Denying Sung's Motion for Preliminary Injunction has already found, after extensive and careful review of the record, that Sung has little likelihood of success on the merits and that irreparable harm is not likely in the absence of preliminary relief.  That is, "substantial constitutional questions" are not raised, and Sung will not suffer "irreparable harm if compelled to seek administrative relief."  *Muhammad*, 770 F.2d at 1495.  Under present circumstances, exhaustion is not excused.

Accordingly, the court dismisses the Amended Complaint without prejudice.  Sung may seek review in this court under the APA after a decision by the ABCMR.  *See Clinton v. Goldsmith*, 526 U.S. 529, 539 (1999) ("A servicemember claiming something other than monetary relief may challenge [an Air Force Board of Correction for Military Records's] decision to sustain a

---

[6] If relief were granted, completion of his residency would then be contingent on Sung's performance.  It would be unrealistic, for example, to expect the ABCMR or this court to require the Army to allow Sung to complete his residency if he later legitimately fails to meet the program's requirements or is deemed incompetent by unbiased authorities.  Thus, even if the ABCMR could not "grant Plaintiff the relief he is seeking of being allowed to complete his surgical residency," as Sung argues, this is not a legitimate basis to excuse exhaustion.  At most, whether relief was granted by this court or the ABCMR, Sung would be reinstated to the residency program in the position he was at before being terminated.

decision to drop him from the rolls (or otherwise dismissing him) as final agency action under the Administrative Procedure Act[.]"); *Chappell*, 462 U.S. at 303; *Burns v. Marsh*, 820 F.2d 1108, 1110 (9th Cir. 1987) ("A district court reviews an ABCMR decision to determine if it is arbitrary, capricious, or unsupported by substantial evidence.").

Given this dismissal, the court need not reach Defendants' alternative arguments that (1) the court lacks jurisdiction over Sung's claims that are based on violations of Army regulations, or (2) Defendants are entitled to summary judgment on Sung's procedural and substantive due process claims.

## V. **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment, Doc. No. 35, is GRANTED. The First Amended Complaint is dismissed without prejudice. The Clerk of Court is directed to enter judgment in favor of Defendants and close the case file. If Plaintiff refiles an action under the Administrative Procedures Act in this district -- after he exhausts administrative remedies before the Army Board for the Correction of Military Records -- such new action may be reassigned to this court

///

///

under Local Rule 40.1, and the $350 filing fee will be waived.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, October 13, 2011.



        /s/ J. Michael Seabright
        J. Michael Seabright
        United States District Judge

*Sung v. Gallagher*, Civ. No. 11-00103 JMS/KSC, Order Granting Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment